IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF JPMBB COMMERCIAL MORTGAGE SECURITIES TRUST 2015-C29, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2015-C29, <br><br> Plaintiff, <br><br> v. <br><br> 1800 16th STREET, LLC, <br><br> Defendant. | CIVIL ACTION <br><br> NO. |

## COMPLAINT

Plaintiff, Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of JPMBB Commercial Mortgage Securities Trust 2015-C29, Commercial Mortgage Pass-Through Certificates, Series 2015-C29 ("Lender"), acting by and through its special servicer, Midland Loan Services, a division of PNC Bank, National Association ("Midland"), for its complaint against defendant, 1800 16th Street, LLC ("Borrower"), avers as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. Lender is a national banking association with its main office, as designated in its Articles of Association, located in Wilmington, Delaware. Non-party Midland is the special servicer for Lender with respect to the Loan (as defined below).

2. Borrower is a Pennsylvania limited liability company with an address c/o Maze Group Development, Inc., 1910 Spring Garden Street, Suite 1, Philadelphia, Pennsylvania

19130. Upon information and belief, none of Borrower's members is a citizen of the State of Delaware.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is controversy exceeds $75,000 and the action is between citizens of different states.

4. Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## II. FACTS

### A. The Original Loan Transaction

5. On or about May 15, 2015, Barclays Bank PLC ("Original Lender") issued to Borrower a commercial mortgage loan in the principal amount of $8,000,000 (the "Loan").

6. The Loan is evidenced by a Promissory Note dated May 15, 2012 [sic], executed by Borrower in favor of Original Lender in the principal amount of $8,000,000 (the "Note"), a copy of which is attached hereto as Exhibit A.

7. To secure repayment on the Note, Borrower executed in favor of Original Lender an Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing effective as of May 15, 2015 (the "Mortgage"), with respect to real and other property located at 1800-1828 N. 16th Street in the City of Philadelphia. A copy of the Mortgage is attached hereto as Exhibit B. The Mortgage was recorded with the Philadelphia Commissioner of Records (the "Recorder") on May 20, 2015, as Document No. 52917772.

8. The Loan is also evidenced by a Loan Agreement between Borrower and Original Lender dated as of May 15, 2015 (the "Loan Agreement"), a copy of which is attached hereto as Exhibit C. The Note, the Mortgage, the Loan Agreement and various other documents executed by Borrower in favor of Original Lender with respect to the Loan are collectively referred to herein as the "Loan Documents."

2

### B. The Assignment of the Loan

9. The Loan was subsequently securitized and assigned by Original Lender to Lender.

10. In connection with its assignment of the Loan, Original Lender assigned the Note, the Mortgage and the other Loan Documents to Lender.

11. The assignment of the Mortgage is evidenced by an Assignment of Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, a copy of which is attached hereto ae Exhibit D, which was recorded with the Recorder on July 22, 2015, as Document No. 52944211.

### C. Relevant Contractual Provisions

12. The Mortgage secures, *inter alia*, the Debt (as defined in the Loan Agreement) owed by Borrower under the Note and the other Loan Documents. (*See* Mortgage at 1.)

13. Borrower is the owner of the real property located at located at 1800-1828 N. 16th Street in the City of Philadelphia, as more fully described in Exhibit "A" to the Mortgage (the "Land"), which, together with the Improvements thereon as defined in the Mortgage, has been operated at all relevant times as student housing known as the Campus View Apartments.

14. The Mortgage creates a first priority lien on and security interest in all of Borrower's right, title and interest in and to the Land and the Improvements, together with all other real and personal property owned by Borrower and collectively defined in the Mortgage as the "Property."

15. The Loan Agreement requires that Borrower pay to Lender on the 6th day of each calendar month the Monthly Debt Service Payment Amount of $39,589.72 (the "Monthly Debt Service Payment"). (Loan Agreement §2.2.1(a) and at pp. 11-12.)

16. The Loan Agreement defines an Event of Default to have occurred if, *inter alia*, "any Monthly Debt Service Payment . . . is not paid when due under the Loan Documents." (Loan Agreement § 8.1(a)(i).)

17. The Loan Agreement also provides that:

> If any principal, interest or any other sums due under the Loan Documents is not paid by Borrower on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by Applicable Law in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.

(Loan Agreement §2.2.5.)

18. Borrower expressly covenants in the Loan Agreement that it will furnish or cause to be furnished to Lender at specified periods various financial information, including but not limited to annual financial statements, profit & loss statements, balance sheets, rent rolls, operating statements and annual budgets (collectively, the "Financial Reporting Obligations"). (*See* Loan Agreement §§ 5.1.10(b), (c), and (e).)

19. It is an Event of Default under the Loan Agreement for Borrower to remain in default of its covenants, including the Financial Reporting Obligations, for 30 days or more after notice from Lender of a covenant default. (*See* Loan Agreement §§ 8.1(a)(xviii) and (xxv).)

20. The Mortgage provides that, upon the occurrence and during the continuance of an Event of Default, Lender may, *inter alia*, "declare the entire unpaid Debt to be immediately due and payable" and "institute proceedings . . . for the complete foreclosure of this Security Instrument under any applicable provision of law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner." (Mortgage §§ 9.01(a)-(b); *see also* Note Art. 2 (acceleration).)

21. The Loan Agreement provides that, upon the occurrence and during the continuance of an Event of Default, "interest on the outstanding principal balance of the Loan and, to the extent permitted by Applicable Law, overdue interest and other amounts due in respect of the Loan, shall accrue at the Default Rate," which is defined as "a rate per annum equal to the lesser of (a) the Maximum Legal Rate, or (b) five percent (5%) above the Applicable Interest Rate [of 4.3000% per annum]." (Loan Agreement § 2.2.4 & at pp. 2 and 5.)

22. The Loan Documents also provide that:

> If, following an Event of Default, Borrower tenders payment of all or any part of the Debt, or if all or any portion of the Debt is recovered by Lender after such Event of Default such tender or recovery shall be deemed a voluntary prepayment by Borrower in violation of the prohibition against prepayment set forth in Section 2.3.1 hereof and Borrower shall pay, in addition to the Debt, (i) an amount equal to the greater of (a) one percent (1%) of the outstanding principal amount of the Loan to be prepaid or satisfied, or (b) the Yield Maintenance Premium that would be required if a Defeasance Event had occurred in an amount equal to the outstanding principal amount of the Loan to be satisfied or prepaid, (ii) all interest which would have accrued at the Default Rate on the amount of the Loan through and including the last day of the Interest Accrual Period related to the Payment Date next occurring following the date of such prepayment, notwithstanding that such Interest Accrual Period extends beyond the date of prepayment and (iii) all other sums due and payable under the Loan Documents.

(Loan Agreement § 2.3.3.)

23. The Mortgage provides that:

> Borrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property (including commencing any foreclosure action), whether or not any legal proceeding is commenced hereunder or thereunder, together with interest at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

(Mortgage § 6.06(b).)

**D.     Borrower's Default on its Obligations**

24.     Beginning in 2016, Borrower failed to comply with the Financial Reporting Obligations of Section 5.1.10 of the Loan Agreement even after receipt of written notice and an opportunity to cure.

25.     By Notice of Event of Default and Reservation of Rights letter dated August 24, 2017 (the "First Default Notice"), a copy of which is attached hereto as Exhibit E, Lender advised Borrower that:

> Events of Default have occurred and are continuing under Section 8.1(a)(xvi) and 8.1(a)(xxv) of the Loan Agreement due to (i) Borrower's failure to comply with the financial reporting requirements of Section 5.1.10(b), (c) and (e) of the Loan Agreement after receipt of written notice and opportunity to cure, and (ii) Guarantor's failure to comply with the financial reporting requirements set forth on Page 5 of the Guaranty after receipt of written notice and opportunity to cure.

(First Default Notice at 1-2.)

26.     Notwithstanding the First Default Notice, Borrower failed to comply with the Financial Reporting Obligations.

27.     Additionally, beginning with the payment due on September 6, 2018, Borrower failed to pay to Lender the Monthly Debt Service Payments due on the Loan.

28.     By Notice of Event of Default and Reservation of Rights letter dated October 11, 2018 (the "Second Default Notice"), a copy of which is attached hereto as Exhibit F, Lender advised Borrower that:

> Defaults and or Events of Default as defined in the Loan Documents have occurred and are continuing under Section 8.1(a)(i) and 8.1(a)(xviii) of the Loan Agreement due to (i) Borrower's failure to make the September and October 2018 Monthly Debt Service Payments when due under the Loan Documents and (ii) Borrower's failure to comply with the financial reporting requirements of Section 5.1.10(b), (c) and (e) of the Loan Agreement after receipt of written notice and opportunity to cure.

(Second Default Notice at 1-2.)

29. Notwithstanding the Second Default Notice, Borrower still failed to comply with the Financial Reporting Obligations and again began to miss the Monthly Debt Service Payments due on the Loan.

30. By Notice of Continuing Event of Default and Reservation of Rights letter dated March 29, 2019 (the "Third Default Notice"), a copy of which is attached hereto as Exhibit G, Lender advised Borrower that:

> Events of Default have occurred and are continuing under Section 8.1(a)(i), 8.1(a)(xviii) and 8.1(a)(xxv) of the Loan Agreement due to (i) Borrower's failure to make the February and March 2019 Monthly Debt Service Payments when due under the Loan Documents and (ii) Borrower's continued failure to comply with the financial reporting requirements of Section 5.1.10(b), (c) and (e) of the Loan Agreement after receipt of written notice and opportunity to cure, and (iii) Guarantor's failure to comply with the financial reporting requirements set forth on Page 5 of the Guaranty after receipt of written notice and opportunity to cure.

(Third Default Notice at 2.)

31. Although Borrower subsequently made a partial payment to Lender of the amounts due, Borrower did not cure the Events of Default identified in the Third Default Notice.

32. Lender, through its counsel, provided a Notice of Continuing Default and Acceleration to Borrower by letter dated May 22, 2019 (the "Notice of Acceleration"), a copy of which is attached hereto as Exhibit H, which advised Borrower that:

> AS OF THE DATE HEREOF: (A) THE EVENTS OF DEFAULT PREVIOUSLY IDENTIFIED IN THE DEFAULT NOTICE LETTERS HAVE NOT BEEN CURED AND ARE CONTINUING; (B) THE DEBT IS HEREBY ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE; (C) DEMAND IS HEREBY MADE OF BORROWER AND GUARANTORS FOR THE IMMEDIATE AND FULL PAYMENT OF THE ENTIRE DEBT, AND (D) INTEREST WILL CONTINUE TO ACCRUE AT THE DEFAULT RATE (AS DEFINED IN THE LOAN AGREEMENT) UNTIL THE DEBT IS PAID IN FULL.

(Notice of Acceleration at 2.)

33. To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

34. Accordingly, Lender brings this action to foreclose the Mortgage.

**F.  Lender's Damages**

35. The following amounts are due and owing by Borrower under the Note and the Mortgage as of May 31, 2019 (except as otherwise indicated), without defense, deduction, offset, recoupment, or counterclaim:

| | |
|---|---:|
| Principal Balance | $7,759,283.59 |
| Interest (4/11/19-6/10/19) | 56,535.00 |
| Default Interest (6/2/16-5/30/19) | 1,202,801.89 |
| Late Fees | 10,779.60 |
| Prepayment Fee/Yield Maintenance Premium | 846,825.00 |
| Special Servicing Fees | 32,305.79 |
| Payoff Processing Fee | 500.00 |
| TOTAL AMOUNT DUE a/o 5/30/19 | $9,909,030.87 |

36. Additional Note and Default interest in the combined amount of $2,004.48 per diem, together with other fees, charges and costs recoverable under the Loan Documents, have continued and continue to accrue on the Loan.

## COUNT ONE – MORTGAGE FORECLOSURE

37. Paragraphs 1 through 36 of this Complaint are incorporated herein by reference.

38. Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

39. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

40. Lender is authorized by the Mortgage and by Pennsylvania law to foreclose the Mortgage in the event of a default by Borrower.

41. There is currently due and owing on the Loan the sum of $9,909,030.87, together with accruing default interest, fees, charges and costs recoverable under the Loan Documents.

WHEREFORE, Lender asks that a judgment in mortgage foreclosure be entered in its favor and against Borrower in the amount of $9,909,030.87, together with additional accrued and accruing interest (at the Default Rate), fees, charges and costs recoverable under the Loan Documents, and that Lender be awarded such other and further relief as the Court in its discretion may deem equitable and just.

Dated: June 14, 2019

Raymond A. Quaglia, PA ID No. 63146
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
quaglia@ballardspahr.com

Counsel for Plaintiff