# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION | : : | CIVIL ACTION |
| Plaintiff, | : | No. 19-2601 |
| v. | : : | |
| 1800 16TH STREET, LLC | : | |
| Defendant. | : | |

McHUGH, J.                                                            FEBRUARY 11, 2020

**MEMORANDUM**

## I.     Relevant Background

This is a commercial mortgage foreclosure case. Defendant 1800 16th Street, LLC, (hereinafter "1800") obtained an $8 million loan from Barclays Bank that was later assigned to the registered holders of JPMBB Commercial Mortgage Securities Trust 2015-C29, Commercial Mortgage Pass-Through Certificates, Series 2015-C29 ("Lender"). Plaintiff Wilmington Trust National Association serves as trustee to the Lender. The loan was secured by a mortgage on Campus View Apartments, a student housing complex located near Temple University in North Philadelphia. Plaintiff contends that Defendant has been in default of its financial reporting obligations under the loan agreement since 2016, and has failed to make timely monthly debt payments since February 2019. Pl. Brief at 4, ECF 2-1; Bacon Aff. ¶¶ 6-7, ECF 2-2.[1] Plaintiff acknowledges that Defendant has made partial payments on the loan since the purported default, but alleges that those payments have not been sufficient to cure the default and that Defendant continues to neglect its reporting obligations. Pl. Brief at 4; Bacon Aff. ¶ 11. Plaintiff further

---

[1] Defendant notes that Deborah Bacon's affidavit is neither sworn nor notarized, but essentially the same facts were encompassed within the sworn testimony of Mr. Paul Lang at the hearing on the motion.

avers that Defendant is wrongfully diverting revenue from the property to reimburse a property management company. Pl. Brief at 4-5; Bacon Aff. ¶¶ 12-13.

Defendant strongly disputes Plaintiff's narrative, arguing that it has complied with the terms of the Loan Agreement. Defendant takes particular issue with Plaintiff's contentions about Defendant's failure to abide by reporting requirements, arguing that Plaintiff has repeatedly failed to keep track of documentation that Defendant has submitted. In support of its position, Defendant has produced a series of email communications between Herbert Reid, Jr—an officer of 1800—and various employees at Wells Fargo, the Master Servicer of the loan. Ex. 1 to Reid III Aff., ECF 17-2. At a minimum, these communications appear to show that Defendant was current in its reporting obligations through December 2017, when a Wells Fargo employee requested financial documentation and subsequently acknowledged to Herbert Reid, Jr. that the documentation had been previously received but mislabeled. Ex. 1 to Reid III Aff. at 11-12.

Despite this clarification, Defendant claims, Wells Fargo began improperly charging default interest on the loan beginning in August 2017 based on Defendant's supposed failure to satisfy its reporting obligations. Wells Fargo did release a surplus of tax escrow funds to Defendant in December 2017, which Defendant states was a result of Wells Fargo determining that Defendant was in compliance with the Loan requirements, but nevertheless did not cease assessing interest and other penalties on the loan amount. Reid III Aff. ¶¶ 9-11. Defendant further contends that it was current with its financial reporting obligations through May 2019, the month before the Complaint was filed.

With regard to actual payments, Defendant admits that it had missed a payment in February 2019, but it made the payment in April after receiving a demand letter in March. *Id.* ¶ 17. Defendant avers that it is current on the principal amounts owed under the Loan as of June

2019, and that its alleged default is based upon the erroneous interest and penalties on the loan. *Id.* ¶¶ 18-19. Defendant accordingly argues that Plaintiff should not be entitled to a receiver on the case, or at a minimum, that the Court should order discovery before ruling on the matter. Defendant avers it would be prejudiced by the appointment of a receiver because it is in the process of negotiating a possible sale of the property. *Id.* ¶¶ 26-27.

**II.     Standard of Review**

Federal Rule of Civil Procedure 66 governs "an action in which the appointment of a receiver is sought," and accordingly governs this Motion. This Court's jurisdiction is based on diversity, and multiple Courts of Appeals have interpreted Federal Rule of Civil Procedure 66 to mandate that district courts sitting in diversity jurisdiction apply federal law with respect to the appointment of a receiver. *See, e.g.*, *Canada Life Assurance Company v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009); *National Partnership Inv. Corp. v. National Housing Development Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993).

The Third Circuit has stated that the appointment of a receiver is an "extraordinary" remedy. It is not to be invoked if milder measures will give the plaintiff, whether creditor or shareholder, adequate protection for his rights." *Maxwell v. Enterprise Wall Paper Manufacturing Company*, 131 F.2d 400, 403 (3d Cir. 1942). The Third Circuit has not yet endorsed a set of factors that district courts should consider in determining whether to appoint a receiver. Many other district courts within the Third Circuit's jurisdiction have turned to the factors identified by the late Judge Irenas in *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604 (D.N.J. 2012). These factors include whether "the property is inadequate security for the loan" and whether "the mortgage contract contains a clause granting the mortgagee the right to a receiver." They additionally include "the continued default of the

3

mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project funds by the mortgagor." *CCC Atlantic*, 905 F. Supp. 2d at 614 (quoting *United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991)). Moreover, these factors may be applied in a less stringent manner if a loan agreement expressly allows for the lender to apply for a receiver in the event of a default. *Id*. at 615 ("The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist."). For present purposes, in the absence of any controlling authority from the Third Circuit, I will adopt these factors as well.

## III. Discussion

Although the issue is a close one, bearing in mind that the appointment of a receiver is an extraordinary remedy, I am not persuaded to grant Plaintiff's motion. I will instead protect Plaintiff's interest by promptly scheduling a full trial on the merits.

The strongest factor weighing in support of a receiver is that the various loan documents contemplate such a remedy. Defendant consented in the event of a default to the specific remedy that Plaintiff seeks here. Notwithstanding that, the defaults here, though significant, are not sufficient to justify "drastic" or "heroic" remedies. *Maxwell*, 131 F.2d at 403.

The remaining factors highlighted by Plaintiff present reason for concern, but not to a degree that would warrant appoint of a receiver:

- Defendant's bankruptcy filing was not global but narrowly targeted to this specific asset. Although its failure to bring forth a plan that would allow the debt to be restructured bodes ill for its ultimate success on the merits of this case, its financial condition is not dire.

- Nominally, the amount of the debt exceeds the value of the collateral, but the amount of the debt remains in dispute and Defendant has made enough of a showing about irregularities on the part of Wells Fargo in servicing the loan to cause the Court to

4

hesitate. Moreover, the purported gap between the collateral and the amount of the loan is comparatively modest. Defendant is however cautioned that it cannot expect the Court to treat the indebtedness as limited to the principal of the loan, because as Plaintiff's counsel aptly notes, banks are not expected to lend money without earning a return.

- The property is not in disrepair and is insured, and the financial records submitted to the court reflect that it has a meaningful cash flow.

- Finally, evidence that one of the principals to 1800 received a portion of the proceeds of the loan does not by itself convince me that fraud or other improper conduct necessarily occurred. I credit the testimony of Herbert Reid, Jr. that he would have incurred costs in connection with the assembly and development of the parcel where the property is located, and on the record as it stands cannot make any definitive determination as to the propriety of his receipt of these funds.

This is a non-jury matter. It will be set for trial on May 18, 2020, with specific case management deadlines set forth in a separate Order. In view of Defendant's intervening bankruptcy filing that delayed a hearing on receivership, the case will not be continued absent extraordinary circumstances.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Appointment of Receiver will be denied. An appropriate Order follows.

    /s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge